IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BLAIR DOUGLASS, individually and on behalf of all others similarly situated, | : | |
| Plaintiff, | : | Case No. ____________________ |
| v. | : | |
| SALSBURY INDUSTRIES, INC. | : | |
| Defendant. | : | |

**NOTICE OF REMOVAL**

KINDLY TAKE NOTICE that the sole Defendant, Salsbury Industries, Inc. (hereinafter, "Salsbury"), by and through its undersigned counsel and pursuant to 28 U.S.C. § 1441, et seq., and in accordance with 28 U.S.C. §§ 1331, 1332, and 1367, respectfully removes the above-captioned matter from the Court of Common Pleas of Allegheny County, Pennsylvania, to this Honorable Court.

## I. PROCEDURAL BACKGROUND.

1. On or about February 20, 2026, the Plaintiff, Blair Douglass, individually and "on behalf of all others similarly situated," commenced this action by the filing of a "Class Action Complaint" in the Court of Common Pleas of Allegheny County, Pennsylvania at Docket No. GD-26-002032. A copy of the Class Action Complaint is attached as **"Exhibit A."** A copy of the State Court Docket Report is attached as **"Exhibit B."**

2. In his Complaint, Mr. Douglass, a Pennsylvania resident, asserts claims that arise under Title III of the Americans with Disabilities Act, and states that he seeks "to ensure Defendant

provides full and equal access to the goods and services that Defendant makes available to the public from its physical facilities." See Class Action Complaint, ¶¶ 16, 27 ("Exhibit A").

3. Specifically, Mr. Douglass, who is legally blind, alleges that he uses screen reader auxiliary aids to remotely access goods and services available on Salsbury's website, located at https://www.lockers.com (the "Website"). Mr. Douglass claims that the Website is not compatible with the screen reader auxiliary aids that he uses, thereby denying him (and the members of his nationwide putative class) full and equal access to Salsbury's goods and services. See Class Action Complaint, ¶¶ 3-6 ("Exhibit A," hereto").

4. On April 1, 2026, Salsbury was served with the Class Action Complaint. See Affidavit of Service, attached as **"Exhibit C."**

5. Salsbury is a corporation organized under the laws of the State of California and maintains its principal place of business in California. See Class Action Complaint, ¶ 20 ("Exhibit A").

6. In his Class Action Complaint, Mr. Douglass states that he

> brings this class action pursuant to Pa. R. Civ. P. 1702, 1708 and 1709 on behalf of himself and the following nationwide class: all blind or visually disabled individuals who use screen reader auxiliary aids to navigate digital content and who have accessed, attempted to access, or been deterred from accessing or attempting to access, or who will access, attempt to access, or be deterred from accessing or attempting to access the Website from the United States.

Class Action Complaint, ¶ 46 ("Exhibit A").

7. Mr. Douglass also alleges that his putative class satisfies the applicable standards for Numerosity, Common Questions of Law and Fact, Typicality and Adequacy of Representation. See Class Action Complaint, ¶¶ 48-50 ("Exhibit A").

8. Mr. Douglass asserts a single substantive violation under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, et seq., and alleges that Salsbury

> violated the ADA by, among other things, denying Douglass and the class the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations; denying Douglass and the class an opportunity to participate in or benefit from goods, services facilities, privileges, advantages, or accommodations; providing Douglass and the class an unequal opportunity to participate in or benefit from goods, services, facilities, privileges, advantages, or accommodations; excluding Douglass and the class, denying them services, and treating them differently than others because of the absence of auxiliary aids and services, or the failure to modify policies and practices; and failing to effectively communicate with Douglass and the class. 42 U.S.C. §§ 12182(a), 12181(b)(1)(A)(i), 12181(b)(1)(A)(ii), 12182(b)(2)(A)(ii), 12182(b)(2)(A)(iii).

See Class Action Complaint, ¶ 59 ("Exhibit A").

9. Mr. Douglass seeks various forms of relief, including, *inter alia:*

> (A) An order certifying the proposed class . . . [;]
>
> (B) A declaratory judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA . . . and the relevant implementing regulations of the ADA . . . [;]
>
> (C) A permanent injunction under 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501 which directs Defendant to take all steps necessary to ensure Defendant's physical facilities and the goods and services that Defendant makes available at its physical facilities are fully, equally, and independently accessible to Douglass and the class by the Website, and which further directs that the Court retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following policies and practices that will cause Defendant to remain in compliance with the law . . . [;]
>
> (D) Payment of actual, statutory, nominal, and other damages, as the Court deems proper;
>
> (E) Payment of costs of suit;

> (F) Payment of reasonable attorneys' fees under 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, including costs to monitor Defendant's compliance with the judgment . . . [;]
>
> (G) Whatever other relief the Court deems just, equitable and appropriate; and
>
> (H) An order retaining jurisdiction over this case until Defendant has complied with the Court's orders.

See Class Action Complaint, *ad damnum* ("Exhibit A").

## II. <u>GROUNDS FOR REMOVAL.</u>

10. Removal of this action is proper on three independent grounds.

11. First, the Court may exercise subject matter jurisdiction over Mr. Douglass' federal cause of action under 28 U.S.C. § 1331 and exercise supplemental jurisdiction over any pendent state-law causes of action under 28 U.S.C. § 1367.

12. Second, the Court may exercise subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because there is complete diversity between the parties and over $75,000 is in controversy, exclusive of interest and costs.

13. Third, the Court may exercise subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because the putative class contains at least 100 members, there is minimal diversity, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

### A. <u>This Court Has Federal Question Jurisdiction.</u>

14. Federal district courts may exercise subject jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. And, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within

such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

15. A case "arises under [federal] law" when federal law "creates the cause of action." Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916); accord Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986).

16. Here, Mr. Douglass asserts an independent cause of action under Title III of the Americans with Disabilities Act, which is a federal statute. See Class Action Complaint, ¶¶ 56-61 ("Exhibit A"). This unquestionably gives rise to federal question jurisdiction. *See, e.g.*, Menkowitz v. Pottstown Memorial Medical Center, 154 F.3d 113 (3rd Cir. 1998) (noting district court had jurisdiction over ADA claim pursuant to 28 U.S.C. § 1331); Menoken v. McNamara, 213 F.R.D. 193 (D.N.J. 2003), *appeal dismissed*, 88 Fed. Appx. 550 (3rd Cir. 2004) (because the district court had original jurisdiction over the ADA claim, removal was proper).

17. Should Mr. Douglass claim that he also has state law claims, while none are conspicuously pled in his Class Action Complaint, this Court also may exercise supplemental jurisdiction over them, as they would be related to his ADA claim. 28 U.S.C. § 1367. State law claims are sufficiently related to a federal claim when they "derive from a common nucleus of operative fact." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966); *see also* 13D Richard D. Freer, *Fed. Prac. & Proc. Jurisdiction*, § 3567.1 (3rd ed.) (describing how "Congress intended to codify," and "courts generally have concluded that § 1367(a) codifies," "the result in United Mine Workers of America v. Gibbs").

18. Accordingly, this Court may exercise jurisdiction over all of Mr. Douglass' claims under 28 U.S.C. §§ 1331 & 1367, and removal is therefore appropriate. See 28 U.S.C. § 1441(a).

**B. <u>The Court Has Traditional Diversity Jurisdiction.</u>**

19. Federal district courts also may exercise jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332.

20. In putative class actions, "there [must be] complete diversity of citizenship between the class representatives and the defendants, that is, no class representative is a citizen of the same state as any defendant." *See, e.g.*, <u>Stell v. Gibco Motor Express, LLC</u>, No. 3:15-CV-1105-DRH-DGW, 2016 WL 2620178, at *3 (S.D. Ill. May 9, 2016).

21. An individual such as Mr. Douglass "is a citizen of the state in which he is domiciled." *See, e.g.*, <u>Kanter v. Warner-Lambert Co.</u>, 265 F.3d 853, 857 (9th Cir. 2001). Because Mr. Douglass alleges that he "resides in and is a citizen of Pittsburgh, Pennsylvania, "he is a citizen of Pennsylvania. Class Action Complaint, ¶ 16.

22. A corporation such as Salsbury is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). As Mr. Douglass acknowledges, Salsbury "is a California corporation with a principal place of business in California." Class Action Complaint, ¶ 20; *see also* <u>Hertz Corp. v. Friend</u>, 559 U.S. 77, 92-93 (2010) (a corporation' s principal place of business is "normally ... where the corporation maintains its headquarters").

23. There is therefore complete diversity between the parties as Mr. Douglass is a citizen of Pennsylvania and Salsbury is a citizen of Pennsylvania.

24. In addition, "the matter in controversy exceeds the sum or value of $75,000,[1] exclusive of interest and costs." 28 U.S.C. § 1332. Where, as here, "the plaintiff seeks injunctive relief, the cost of complying with the injunction is included in the amount in controversy." *See, e.g.*, Martinez v. Johnson & Johnson Consumer Inc., No. 2:20-CV-04316-RGK-PD, 2020 WL 3820392, at *2 (C.D. Cal. July 8, 2020); accord Chavez v. JPMorgan Chase & Co., 888 F.3d 413, 416 (9th Cir. 2018).

25. In addition to unliquidated "actual, statutory, nominal and other damages," Mr. Douglass seeks, among other things, a permanent injunction that directs Salsbury "to take all steps necessary to ensure Defendant's physical facilities and the goods and services that Defendant makes available at its physical facilities are fully, equally, and independently accessible to Douglass and the class by the Website, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following policies and practices that will cause Defendant to remain in compliance with the law[.]" Class Action Complaint, *ad damnum*, ¶ (C). See specific injunctive relief sought by Mr. Douglass in the form of Court-mandated deliverables by Salsbury in stages starting at 90 days from the Court's order, and proceeding to further deliverables within 120 days, 150 days, 180 days and 210 days thereafter. Id., ¶¶ (C)(1)-(7).

26. Further, Mr. Douglass seeks a further mandate that "[c]ommencing in 24 months of the Court's order, Defendant shall ensure that all then-current employees responsible for the

---

[1] Salsbury denies that it is liable in any amount to Mr. Douglass or any member of his putative class. This Court should take as true the allegations contained in the Class Action Complaint and assume that Mr. Douglass would prevail on each and every claim, *only* for purposes of evaluating the amount in controversy. *See, e.g.*, Lewis v. Verizon Commc'ns., Inc., 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability.").

website or mobile application design, development, or maintenance are provided with refresher accessibility training at regular intervals that shall not exceed two years. Id., ¶¶ (C)(7).

27. Mr. Douglass goes on to demand audits on at least a monthly basis and accessibility/user testing on at least a quarterly basis. Id., ¶¶ (C)(8)-(9). He also requests that the Court order Salsbury to seek a commitment from its vendors to provide content that conforms with Web Content Accessibility Guidelines 2.1 A/AA and that Salsbury provide him, through his counsel "with a report on the first, second and third anniversaries of the Court's order which summarizes the progress Defendant is making in meeting its obligations under the Court's order." Id., ¶¶ (C)(10)-(11).

28. Statutory attorney fees are considered when determining whether the amount in controversy is satisfied under 28 U.S.C. § 1332(a). Suber v. Chrysler Corp., 104 F.3d 578, 585 (3rd Cir. 1997). Here, Mr. Douglass alleges a statutory claim for violation of Title III of the Americans with Disabilities Act. See Amended Complaint, *ad damnum* ¶ (F) (seeking attorneys' fees under 42 U.S.C. § 12205 & 28 C.F.R. § 36.505). Therefore, attorney's fees are statutorily provided for, and such fees can be included in the amount in controversy calculation.

29. Assuming an average rate for attorneys' fees of between $485-700 per hour in this area of litigation, the $75,000 amount in controversy requirement would be met if Plaintiff's counsel spends just 155 hours solely on Plaintiff's case at a rate of $485/hour. *See, e.g.*, Buscema v. Wal-Mart Stores East LP, 485 F.Supp.3d 1319, 1332-33 (D.N.M. 2020) ("[I]f Plaintiff's counsel were to bill at the same rate they billed in the Puma case–$400 per hour–they would hit the jurisdictional threshold in 187.5 hours . . . Given the complexity of civil litigation, the Court cannot say that it is 'legally impossible' for Plaintiff's counsel to spend that much time litigating the

individual claim in this case."); Synergetics, Inc. v. Hurst, 333 F. Supp. 2d 841, 843 (E.D. Mo. 2004) (finding that attorneys' fees alone would likely exceed $75,000 amount in controversy).

30. Time spent on any preliminary investigations and preparation of this case could easily total 155 hours before the Complaint was even filed, and counsel will expend additional time litigating Mr. Douglass' claim through trial. Therefore, it is reasonable to conclude that the $75,000 threshold will be met through counsel's attorneys' fees on Mr. Douglass' claims alone. Thus, Mr. Douglass' request for fees is alone sufficient to satisfy the $75,000 amount-in-controversy requirement under Section 1332(a).

31. The requirements for traditional diversity jurisdiction are therefore met. And because Salsbury is neither incorporated in Pennsylvania, nor maintains its principal place of business here, it may remove this case based on the parties' complete diversity of citizenship. See Class Action Complaint, ¶ 20; 28 U.S.C. § 1441(b)(2).

**C. The Court Has Jurisdiction under the Class Action Fairness Act.**

32. The Class Action Fairness Act ("CAFA") permits removal where: (1) the case is a "civil action ... and is a class action"; (2) the aggregate number of putative class members is 100 or greater; (3) there is diversity of citizenship between one or more plaintiffs and one or more defendants; and (4) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d). Each prerequisite is met here.

33. First, this case is a putative "class action" under CAFA because it was brought under a state statute or rule, namely Pennsylvania Rules of Civil Procedure Nos. 1702, 1708 & 1709:

> Douglass brings this class action pursuant to Pa. R. Civ. P. 1702, 1708, and 1709 on behalf of himself and the following nationwide class: all blind or visually disabled individuals who use screen reader auxiliary aids to

> navigate digital content and who have accessed, attempted to access or been deterred from accessing or attempting to access the Website from the United States.

Class Action Complaint, ¶ 46 (“Exhibit A”).

34. Second, the “number of members of all plaintiff’s proposed nationwide classes in the aggregate” is far more “than 100.” 28 U.S.C. § 1332(d). Mr. Douglass describes the putative class:

> Numerosity: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action is the most manageable litigation method available, facilitating judicial economy and benefiting both parties and this Court. Pa. R. Civ. P. 1702(1), 1708(a)(2), (b)(1).

Class Action Complaint, ¶ 47 (“Exhibit A”).

35. Third, sufficient diversity exists. To satisfy CAFA's diversity requirement, the parties need only be minimally diverse-that is, one putative class member must be a citizen of a state different from that of one defendant. 28 U.S.C. § 1332(d)(2); *see, e.g.*, United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co., 602 F.3d 1087, 1090-91 (9th Cir. 2010).

36. Here, the only named plaintiff, Mr. Douglass, is a citizen of Pennsylvania. See Class Action Complaint, ¶ 16 (“Exhibit A”). Salsbury, the only named defendant, is a citizen of California. Id., ¶ 20. Therefore, sufficient diversity exists under CAFA.[2]

37. Fourth, taking Mr. Douglass’ allegations as true, at least $5,000,000 is in controversy. Mr. Douglass alleges that he is bringing this case on behalf of himself and a

---

[2] Because Salsbury is not a Pennsylvania citizen, the home-state exception to CAFA removal does not apply. See 28 U.S.C. § 1332(d)(4).

"nationwide class." Class Action Complaint, ¶ 46 ("Exhibit A"). Among other things, he is seeking various forms of damages and a permanent injunction. Id., *ad damnum* ¶¶ (C), (D), (E) & (G). Further, where, as here, attorneys' fees are authorized by the underlying statutes, a court also may "include[] attorneys' fees" in assessing the amount in controversy. Id., *ad damnum* ¶ (F) (seeking attorneys' fees under 42 U.S.C. § 12205 & 28 C.F.R. § 36.505). *See*, *e.g.*, Frederico v. Home Depot, 507 F.3d 188, 199 (3rd Cir. 2007) (holding that compensatory damages, punitive damages, and attorney's fees available to putative class must be considered when calculating amount in controversy); *see also* Suber v. Chrysler Corp., 104 F.3d 578, 585 (3rd Cir.1997) (attorneys' fees are "necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action.").

38. The cost for Salsbury to comply with the injunctive relief sought by Mr. Douglass and his putative class, along with associated attorneys' fees, exceeds the CAFA threshold of $5 million. In at least some class action cases, class counsel sought, and were awarded, approximately $4 million or more in attorneys' fees. *See*, *e.g.*, In re Shop-Vac Mktg. & Sales Pracs. Litig., 2016 WL 7178421, at *17 (M.D. Pa. Dec. 9, 2016) (awarding more than $4 million in attorneys' fees); O'Keefe v. Mercedes-Benz USA, LLC, 214 F.R.D. 266, 311 (E.D. Pa. 2003) (awarding more than $4.8 million in attorneys' fees).

39. District courts in the Third Circuit generally find that consumer class actions, including those brought under the statute at issue here, require a significant amount of attorney hours to litigate, even when a case terminates before judgment. *See*, *e.g.*, Fleisher v. Fiber Composites, LLC, No. CIV.A.12-1326, 2014 WL 866441, at *14 (E.D. Pa. Mar. 5, 2014) (1,149.5 hours found reasonable where case settled after pleading stage after some discovery was exchanged and reviewed by the parties); Rossi v. The Proctor & Gamble Co., No. CIV.A. 11-7238

JLL, 2013 WL 5523098, at *10 (D.N.J. Oct. 3, 2013) (952 hours found reasonable where case settled after pleading stage during the early stages of discovery). Cases proceeding to later stages require even more time. *See, e.g.*, In re Wellbutrin SR Antitrust Litig., No. CV 04-5525, 2011 WL 13392296, at **2, 6 (E.D. Pa. Nov. 21, 2011) (41,000 hours found reasonable where case was "well past discovery and virtually ready for trial at the time of settlement"); *see also* In re Shop-Vac Mktg. & Sales Pracs. Litig., No. 2380, 2016 WL 7178421, at **9, 13, 16–17 (M.D. Pa. Dec. 9, 2016) (7,517.43 hours found reasonable where case settled after discovery in multidistrict consumer class action case); Hegab v. Fam. Dollar Stores, Inc., No. CIV.A. 11-1206 CCC, 2015 WL 1021130, at *13 (D.N.J. Mar. 9, 2015) (in employee misclassification class action case, finding over 1,000 hours of work reasonable where case settled only after extensive discovery). The median billable rate for attorneys in Pennsylvania in the class action context is approximately $485 to $700 per hour. *See also* Chakejian v. Equifax Info. Servs., LLC, 275 F.R.D. 201, 216–17 (E.D. Pa. 2011) (accepting rates of $125 to $175 for paralegals and $485 to $700 for partners); Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 260 (E.D. Pa. 2011) (accepting rates of $650 for partners and $175–$225 for paralegals in a consumer class action litigation); *see also* In re Shop-Vac Mktg. & Sales Pracs. Litig., No. 2380, 2016 WL 7178421, at *15 (M.D. Pa. Dec. 9, 2016) ("District courts in this Circuit have approved awards of attorneys' fees in class action settlements where an attorney's hourly rate reached $835.00/hour or averaged $681.15/hour.").

40. Under CAFA, the Court may determine the amount in controversy based on the value of the injunctive relief from either the plaintiffs' or the defendant's point of view. *See, e.g.*, Auto-Owners Ins. Co. v. Stevens & Ricci Inc., 835 F.3d 388, 397–98 (3rd Cir. 2016) (citing Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 347 (1977)) (stating the amount in controversy is measured by "the value of the object of the litigation"); Lenell v. Advanced Min. Tech., Inc., No. 14-CV-01924, 2014 WL 7008609, at *3 (E.D. Pa. Dec. 11, 2014) (valuing

equitable relief from the plaintiffs' viewpoint); Excel Pharm. Servs., LLC v. Liberty Mut. Ins. Co., 389 F. Supp. 3d 289, 293 (E.D. Pa. 2019) (valuing declaratory relief from defendant's viewpoint); Lewis v. Ford Motor Co., 610 F. Supp. 2d 476, 491, n.6 (W.D. Pa. 2009) (valuing injunctive relief from defendant's viewpoint).

41. To establish the amount in controversy sufficient to remove a class action to federal court, a defendant need not submit proof to establish the amount in dispute, but rather "may simply allege or assert that the jurisdictional threshold has been met." Dart Cherokee Basin Operating Co., 574 U.S. at 89. A defendant satisfies "CAFA's amount in controversy requirement where its notice of removal includes a plausible allegation that the stakes exceed $5,000,000." Fox v. Chipotle Mexican Grill, Inc., No. No. 2:20-cv-1448, 2021 WL 706757, at *6 (W.D. Pa. Feb. 23, 2021); *see also* Lewis, 610 F. Supp. 2d at 483.

42. When removing a lawsuit, the defendant may present an estimate of the amount in controversy based on a "reasonable reading of the value of the rights being litigated." Judon v. Travelers Prop. Cas. Co. of Am., 773 F.3d 495, 507 (3rd Cir. 2014) (quoting Werwinski v. Ford Motor Co., 286 F.3d 661, 666 (3rd Cir. 2002)).

43. Mr. Douglass' allegations alone thus place more than $5,000,000 in controversy. *See, e.g.*, Campbell v. Vitran Exp., Inc., 471 F. App'x 646, 648 (9th Cir. 2012) (in assessing CAFA's amount-in-controversy requirement, "a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint").

44. Accordingly, the requirements for removal under CAFA are met, and this case is properly removable under 28 U.S.C. § 1441(a).

## III. TIMELINESS OF REMOVAL.

45. Mr. Douglass served a copy of his Complaint on Salsbury on April 1, 2026. See Affidavit of Service ("Exhibit C"). Because this Notice of Removal is filed within thirty days of service of the Complaint, it is timely under 28 U.S.C. §§ 1446 & 1453. *See, e.g.*, Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347-48 (1999) (holding that a "defendant's time to remove is triggered by simultaneous service of the summons and complaint").

## IV. VENUE.

46. The United States District Court for the Western District of Pennsylvania is the appropriate venue for removal pursuant to 28 U.S.C. § 1441(a) because it embraces the place where Mr. Douglass originally filed the case, in the Court of Common Pleas of Allegheny County, Pennsylvania. See 28 U.S.C. §§ 118(c) & 1441(a).

## V. NOTICE.

47. Salsbury will promptly serve this Notice of Removal on counsel for Mr. Salsbury and will promptly file a copy of this Notice of Removal with the Prothonotary of the Court of Common Pleas of Allegheny County, Pennsylvania at docket number GD-26-002032, in which the action is pending, as required under 28 U.S.C. § 1446(d).

48. Pursuant 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings, and orders served" upon Salsbury, as well as other documents filed in the state court action are filed concurrently with this Notice of Removal:

| | |
|---|---|
| Class Action Complaint | **"Exhibit A"** |
| State Docket Entry Report | **"Exhibit B"** |
| Affidavit of Service | **"Exhibit C"** |

## VI. CONCLUSION.

49. For the foregoing reasons, Salsbury respectfully submits that this action is properly removed to this Court, and Salsbury respectfully requests that this Court proceed as if this case had been originally filed in this Court. If any question arises as to the propriety of the removal of this action, Salsbury respectfully requests the opportunity to present a brief and a hearing in support of its position that this case is subject to removal.

50. Prior to the filing of this Notice of Removal, the undersigned counsel for Salsbury conferred with counsel for Mr. Douglass, who indicated that Mr. Douglass does not oppose Salsbury exercising its right to seek removal.

WHEREFORE, the Defendant, Salsbury Industries, Inc., respectfully notices the removal of this case from the Court of Common Pleas of Allegheny County, Pennsylvania, to the United States District Court for the Western District of Pennsylvania.

Respectfully submitted,

**CIPRIANI & WERNER, P.C.**

By: */s/William B. Pentecost, Jr.*
William B. Pentecost, Jr., Esq.
Pa. I.D. No. 78054
Lauren Despot Krofcheck, Esq.
Pa. I.D. No. 206258

650 Washington Road, Suite 700
Pittsburgh, PA 15228
412.563.2500 (Telephone)
412.563.2080 (Facsimile)
wpentecost@c-wlaw.com
lkrofcheck@c-wlaw.com

***Counsel for the Defendant,***
**Salsbury Industries, Inc.**

OF COUNSEL:

E. Sean Mcloughlin, Esq.
Hill, Farrer & Burrill LLP
City National Plaza
515 S Flower St, 7th Floor
Los Angeles, CA 90071
213.621.0869
smcloughlin@hillfarrer.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true and correct copy of the foregoing document, **NOTICE OF REMOVAL,** has been served upon the following counsel of record via the Court's ECF system, and by email transmission on this, the 1st day of May, 2026:

Kevin Tucker, Esq.
Kevin Abramowicz, Esq.
Chandler Steiger, Esq.
Stephanie Moore, Esq.
Kayla Conahan, Esq.
Jessica Liu, Esq.

**EAST END TRIAL GROUP LLC**
6901 Lynn Way, Suite 503
Pittsburgh, PA 15208

ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com
kconahan@eastendtrialgroup.com
jliu@eastendtrialgroup.com

*(Counsel for Plaintiff)*

*/s/William B. Pentecost, Jr.*
WILLIAM B. PENTECOST, JR., ESQ.
***Counsel for the Defendant,***
***Salsbury Industries, Inc.***